# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 86 C 7623 | **DATE** | 5/11/2000 |
| **CASE TITLE** | Peggy Gruca vs. Alpha Therapeutic Corporation, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing is set for May 25, 2000 at 9:30 A.M.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Alpha Therapeutic Corporation's Motion for Summary Judgment [813] is denied. This case is set for status on May 25, 2000 at 9:30.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | *RJ* courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

MAY 1 2 2000

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PEGGY GRUCA, formerly known as )
PEGGY POOLE, individually and as )
Administrator of the Estate of Stephen )
Poole, Deceased, )
         )
                 Plaintiff, )
         )
      v. )
         )
ALPHA THERAPEUTIC CORPORATION, )
a foreign corporation, and THE GREEN CROSS )
CORPORATION, a Japanese corporation, )
         )
                 Defendants. )

**DOCKETED**

**MAY 1 2 2000**

Case No. 86 C 7623

Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

### Background

Plaintiff Peggy Gruca has brought suit on behalf of herself, her two minor children, and the estate of her late husband, Stephen Poole, against Alpha Therapeutic Corporation[1] for damages stemming from Poole's 1987 AIDS-related death. Poole was a hemophiliac with a severe deficiency of Factor VIII – a protein necessary for clotting – in his plasma. Poole used a commercially prepared product called Factor VIII concentrate, which was prescribed by his doctor, to treat bleeding episodes.

In 1986, Poole was diagnosed with AIDS, and he died in 1987. Gruca originally brought this action asserting a variety of negligence claims against Alpha and three other manufacturers of the Factor VIII concentrate used by Poole. She alleged that the manufacturers failed to minimize the risks of transmitting viruses, including the virus that causes AIDS, through the

---

[1] Alpha's Japanese parent company – the Green Cross Corporation – was dismissed from the case for lack of personal jurisdiction. *See Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp.2d 862 (N.D. Ill. 1998).

Factor VIII concentrate.

This case was tried before Judge Grady in October and November 1993. At that time, Gruca's complaint set forth two separate theories of liability. The first four counts – a surviving personal injury claim, wrongful death, funeral and burial expenses, and emotional distress – were based on traditional negligence, which required a showing of proximate causation. The fifth and sixth counts – a surviving personal injury claim and wrongful death – were based on a theory of alternative liability, under which Gruca alleged that she could not identify the manufacturer responsible for transmitting the HIV virus to her husband. (*See* Exh. C to Mtn. for Summ. J.)

Judge Grady directed a defense verdict as to the first three counts of Gruca's complaint. The underlying justification and impact of this directed verdict is a matter of considerable dispute, and is at the core of this summary judgment motion. Judge Grady also directed a defense verdict as to Gruca's theory of antigenic stimulation – *i.e.*, the claim that the defendants were liable because their products given to her husband after his initial infection with the HIV virus had accelerated or aggravated his disease. The alternative liability claims, as well as the emotional distress claim, were tried to a jury verdict in favor of the defense.

According to Alpha, Gruca never appealed the first directed verdict – *i.e.*, the one disposing of the traditional negligence claims set forth in Counts I through III. Gruca argues that this issue was raised on appeal, and that the antigenic stimulation claim (which was undisputedly raised on appeal) is sufficiently intertwined with the traditional negligence claims to avoid waiver on either issue. The parties agree that the Seventh Circuit vacated and remanded the case for a new trial, but do not agree as to the impact of its holding or scope of its remand.

After remand, Gruca settled with three of the four original defendants – all except for Alpha. In her Fifth Amended Complaint, Gruca has brought a surviving personal injury cause of

2

action (Count I) and claims for wrongful death (Count II), funeral and burial expenses (Count III), and emotional distress (Count IV). These claims are all based on traditional negligence, rather than alternative liability, and mirror the first four counts of Gruca's previous complaint – giving rise to Alpha's current motion for summary judgment.

Alpha argues that under the law of the case doctrine, Gruca's current claims fail as a matter of law. Because Gruca did not raise on appeal the directed verdict on Counts I through III, Alpha argues that those claims are not within the scope of the appellate court's remand, and cannot be relitigated. Due to her settlement with the other defendants, Gruca has not brought any claims based on alternative liability theories, which Alpha contends are the only claims properly heard on remand. As to her emotional distress claim, which was not subject to the directed verdict, Alpha urges that it nevertheless fails as a matter of law because Gruca cannot establish any causal connection between Alpha and her alleged emotional distress. Alternatively, Alpha argues that, because Gruca's previous theories were based on her purported inability to identify which manufacturer's product contaminated her husband, she should be judicially estopped from now asserting that she can identify Alpha as the source.

Gruca insists that the law of the case does not preclude her current claims because she did appeal the directed verdict on Counts I through III, because the antigenic stimulation claim was intertwined with those counts, and because the appellate court's remand was not limited to specific issues. Alternatively, Gruca argues that this case comes within an exception to the law of the case doctrine. She also argues that judicial estoppel should not apply because her statements regarding her inability to identify the source of the contaminant were made in support of alternative theories of liability, and thus do not preclude her current complaint.

## Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"As a general principle of judicial decision-making, the doctrine of the law of the case establishes a presumption that a ruling made at one stage of the proceedings will be adhered to throughout the suit." *Alston v. King*, 157 F.3d 1113, 1116 (7th Cir. 1998). The doctrine "is no more than a presumption, one whose strength varies with the circumstances; it is not a straightjacket." *Id.* (quoting *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)). To resolve the doctrine's applicability to this case, the court must determine the effect a subsequent appeal had on one of the trial court's rulings. If Gruca failed to appeal the directed verdict on Counts I through III, the law of the case will preclude her from resurrecting those counts on remand. "Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case." *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996).

First, the court must determine what the law of the case was before the appeal – this proves to be no easy task. Judge Grady granted two directed verdicts in defendants' favor. First, at the close of Gruca's evidence, Judge Grady granted a directed verdict on Counts I, II, and III of

4

the Fourth Amended Complaint. (Exh. E to Mtn. for Summ. J.) While the basis for the ruling is not set forth on the minute order, the court's discussion with the parties at the time provides at least some context to the ruling:

> Mr. Ring [Gruca's attorney]: Well, it is the counts that you [the court] had said you would direct a verdict on. One I think was family expense. There is no question about it. That was, I think, Count 3. Counts 1 and 2 were negligence counts. They are inconsistent with the alternate liability counts. Your Honor said you would direct. I had considered withdrawing it, but I think it's easier just to let you direct on it and let the record show it and be done with it, unless you feel otherwise. I have no strong feelings.

> The Court: I don't either. What do the defendants think is the best approach to those counts[?]

> Mr. Albert [defense attorney]: We think a directed verdict, Your Honor, is the appropriate thing to do.

> Mr. Bell [defense attorney]: We think a directed verdict as well on the counts of negligence since there has been no direct evidence of negligence on causation by the plaintiffs in this case.

> Mr. Ring: It's all right.

> Mr. Albert: When the trial started, they were a part of the trial, and I believe Your Honor ruled that it was an alternative liability case as it became apparent there had been no proof of negligence.

> The Court: All right. These are counts –

> Mr. Ring: 1 and 2.

> Mr. Albert: The negligence counts.

> Ms. Gourley [defense attorney]: Count 3 is the funeral expenses count, Your Honor.

> The Court: And I have already directed on that, haven't I?

> Ms. Gourley: Well, I'm not sure you have officially. You stated you were going to.

> Mr. Ring: You stated for the record that you –

The Court: All right. Then I'll direct the verdict on Counts 1, 2, and 3.

****

The Court: And the basis for doing so in regard to Counts 1 and 2 is that they are straight negligence counts, and the alternative liability burden of proof shift does not apply to that.

(Exh. D to Mtn. for Summ. J.)

The "alternative liability burden of proof shift" referred to by Judge Grady was explained more fully by Judge Moran, who presided over the case prior to Judge Grady and allowed Gruca to amend her complaint to add an alternative liability theory. Judge Moran relied on the Restatement's definition, which provides that: "[w]here the conduct of two or more actors is tortious, and it is proved that the harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm." *Poole v. Alpha Therapeutic Corp.*, 696 F. Supp. 351, 355 (N.D. Ill. 1988) (quoting Restatement § 433B(3)). Judge Moran noted further that "[a]s traditionally applied, the theory requires that each negligent actor prove that his actions did not cause the plaintiff's injury, and in failing such proof all defendants are liable." *Id.* On appeal, Gruca explained that under the alternative liability theory, she had "the burden of proving: (1) negligence; (2) that Poole used the product of the defendants; and (3) that such product could have caused Poole's infection." (Exh. J to Mtn. for Summ. J. at 40-41) (emphasis in original)

Judge Grady allowed the case to go to the jury under this theory of liability, but did not allow the case to go to the jury under the traditional negligence claims set forth in Counts I through III. His stated basis for directing the verdict – that as "straight negligence counts . . . the alternative liability burden of proof shift does not apply" (Exh. D to Mtn. for Summ. J.) – is unclear. Judge Grady could have meant that if Gruca bore the burden of establishing causation

6

as to one particular defendant, she would fail. If this is the basis for the ruling, it does not suggest that Gruca failed to establish Alpha's negligence, which was an element of her traditional and alternative liability claims. In any event, rather than suggesting that Gruca could not establish causation, the passage as a whole could be read to imply that Judge Grady directed the verdict because the traditional negligence claims were inconsistent with the alternative liability claims, not because there was any specific failure in Gruca's causation proof. What is clear is that a directed verdict was granted as to Counts I, II, and III, and that those counts are identical to Counts I, II, and III in Gruca's current complaint.

The second directed verdict granted by Judge Grady, relating to the "antigenic stimulation" theory, did not take the form of a formal judgment, but rather a jury instruction. The judge instructed the jury that:

> One of the issues raised by the testimony in this case is whether the disease process in a person infected with the HIV virus can be accelerated or aggravated by additional exposure to the same or a different strain of the virus. Whatever the merits of the dispute as a scientific matter, I instruct you that there is insufficient evidence in this case that Stephen Poole's disease process was, in fact, accelerated or aggravated by multiple exposures.

(Exh. A to Def.'s Reply)

The court did not expressly indicate whether it viewed the antigenic stimulation theory as relating to the previously dismissed Counts I through III, or to the alternative liability theory represented in Counts V and VI. Gruca insists that evidence of antigenic stimulation was offered as support for the traditional negligence claims (Pl.'s Resp. at 2), but does not cite any support in the record for that proposition.

After the jury returned a verdict for the defendants on the remaining claims (Exh. F to Mtn. for Summ. J.), Gruca moved for a new trial. One of Gruca's arguments was that the trial

court erred by instructing the jury to disregard the antigenic stimulation evidence. The substance of the argument suggests that the theory was not offered against Alpha:

> [T]here was substantial evidence both on the subject of acceleration generally and as it related specifically to Stephen Poole. Significantly, in 1985 Poole was clinically free of the AIDS virus, but by early 1986, after having received the product of the three defendants, other than Alpha, he had progressed to full-fledged AIDS. Under such circumstances, it was error for the Court to direct a verdict on this issue by means of Instruction No. 30. (Tr. 5050-51)

> The prejudice to plaintiffs resulting from this ruling was overwhelming: it effectively removed Armour, Baxter and Cutter from this lawsuit since their concentrate was used by Stephen Poole only in January, February, March and April of 1985 after he "more probably than not" had already been infected by the product of Alpha.

(Exh. H. to Pl.'s Resp. at 23)

Contrary to Gruca's current argument, her motion for a new trial suggests three reasons why antigenic stimulation was offered in support of her alternative liability theory. First, if rejecting the antigenic stimulation theory effectively removed Armour, Baxter and Cutter from the case, and thus was the only theory by which they could be held liable, then the theory must not have been offered solely as support for Counts I through III. If that was the case, then those three defendants would effectively have been dismissed when those counts were dismissed, and the jury instruction would have been pointless. Second, if those three defendants' products were not used by Poole until after he was infected, then antigenic stimulation was the only way that Gruca could implicate those defendants under an alternative liability theory. If the theory related only to Counts I through III, then the alternative liability theory would have been a non-starter, since by definition it requires multiple defendants, but would only have applied to Alpha. Third, because Gruca offers no indication that she could distinguish among the three defendants as to which caused the aggravation of Poole's previous infection, it appears that she could only have

proceeded against them under the alternative liability theory.

Gruca admitted as much before the trial court in her response to defendants' renewed motion for summary judgment on the alternative liability claims. Gruca characterized her theory of causation on those claims as follows:

> Given the fact that plaintiffs will ask the jury to look at four products, each of which could have transmitted HIV to Stephen Poole and each of which could have caused disease progression, plaintiffs fall squarely within the parameters of alternate liability, all products sharing a common defect – contamination with HIV.

(Exh. D to Def.'s Reply at 4)

These statements by Gruca, along with the fact that Gruca's appellate argument challenging the antigenic stimulation jury instruction does not even reference the directed verdict on Counts I through III, indicate that antigenic stimulation was offered in support of the alternative liability theory represented in Counts V and VI. This is bolstered by the trial court's opinion denying Gruca's motion for a new trial, in which the court observed that "[t]he complaints about jury instructions have to do mostly with instructions relating to proximate cause, an issue the jury did not reach." (Exh. H to Mtn. for Summ. J. at 2) The court further noted that defendants had the burden of proof on proximate cause (*id.*), referring to the burden-shifting approach under the alternative liability theory.

These observations comport with this court's understanding of what transpired at trial – Gruca relied on antigenic stimulation as her theory of causation as to the three defendants other than Alpha. If Gruca could have proved that the defendants were negligent, Alpha would have needed to prove that it did not cause the initial infection of Poole, and the other three would have needed to prove, individually, that they did not aggravate or accelerate the disease process through post-infection exposures. Because the jury found that the defendants were not negligent,

the burden of proof never shifted to defendants, and the inquiry ended. It remains unclear, however, whether the antigenic stimulation theory also related to the traditional negligence claims. If it did not, then Counts I through III would have been non-starters as applied to the defendants other than Alpha. If antigenic stimulation was the only means by which Gruca could reach those defendants under alternative liability, it would also have been the only means by which those defendants could have been reached under traditional negligence.

In determining the law of the case as it stands now, the court must next analyze the impact, if any, that Gruca's appeal had on the trial court's directed verdict on Counts I through III. As set forth below, the resolution of this issue turns to a large extent on whether the appellate court's reversal of the directed verdict on antigenic stimulation carries with it a reversal of the directed verdict on Counts I through III. While Gruca's appeal challenged the court's antigenic stimulation ruling, it did not substantively challenge the directed verdict on Counts I through III.

Gruca raised four arguments on appeal: first, the jury's finding that Alpha was not negligent was against the clear weight of the evidence; second, the trial court erred in directing a verdict on the issue of antigenic stimulation; third, due to various improper jury instructions – none relating to the present inquiry – Gruca was denied her right to a fair trial; fourth, Gruca was prejudiced by improper closing arguments and the granting of surrebuttal arguments. (Exh. J to Mtn. for Summ. J. at i-ii) Only the second argument is relevant to our inquiry.

The substance of Gruca's appellate brief supports the notion that the antigenic stimulation theory related to the alternative liability claims. In characterizing the trial court's antigenic stimulation ruling, Gruca explained that "[t]he basis of the District Court's ruling was that there was insufficient evidence that there was an aggravation or acceleration of Poole's disease and that while there was 'some' evidence supporting plaintiff's position, any verdict returned on the

issue would be based on speculation." (*Id.* at 24) At the time the court instructed the jury, the traditional negligence claims (Counts I through III) had already been dismissed. There was no danger of a speculative verdict as to those claims. Rather, the court apparently feared that if the jury relied on antigenic stimulation evidence in deciding the alternative liability claims, the verdict would be speculative.

Gruca now argues that she challenged the directed verdict on Counts I through III in her appeal, relying on one of her brief's "Issues Presented," which states:

> Whether the District Court erred in directing a verdict in favor of defendants on plaintiff's claim that, Poole [sic] had already been infected with HIV as a result of his use of Alpha's Factor VIII concentrate by the time of his January, 1985 hospitalization, his development of advanced AIDS was hastened as a result of contaminants in the concentrates he received while hospitalized?

(*Id.* at 1) Besides being nonsensical, this language challenges the directed verdict on the antigenic stimulation theory, not the directed verdict on Counts I through III. As presented, there is no express indication that the antigenic stimulation theory applied to the traditional negligence claims, as opposed to the alternative liability claims.

Further, Gruca's challenge to the directed verdict on antigenic stimulation had no impact on Alpha. Echoing her arguments before the trial court, Gruca argued on appeal that the "evidence gave rise to a jury question as to whether the progress of Poole's disease was hastened, consequently speeding his death, by viral contamination of the Factor VIII concentrates manufactured by Cutter, Baxter and Armour and the District Court clearly erred in directing a verdict on the issue of antigenic stimulation." (*Id.* at 24-25) The antigenic stimulation theory was not relevant to Alpha, but provided a basis by which Gruca could establish causation by the other three defendants.

Gruca targeted Alpha individually on appeal with her claim that the evidence clearly

established the company's negligence. (*Id.* at 17)  However, this argument challenged the jury verdict, not the initial directed verdict.  A finding of negligence by the jury would have shifted the burden to Alpha to prove that it was not the cause of Poole's disease.  Gruca explained that the "alternative liability case proceeded to trial on the basis that Alpha, Armour, Baxter and Cutter were 'all possible tortfeasors before the court.'"  (*Id.* at 35) (quoting 12/28/92 Order)  The negligence argument does not affect the law of the case as to Counts I through III.

The only part of Gruca's appellate brief in which she addresses Counts I through III is the conclusion, which provides:

> For the above and foregoing reasons, plaintiff respectfully requests that this Court reverse the judgment entered on the jury's verdict in favor of defendants, and grant a new trial against all defendants herein or, in the alternative, reverse the judgment entered on the jury's verdict in favor of defendants, as well as the District Court's November 23, 1994 Order entering judgment at the close of the evidence in defendants' favor on Counts I, II and III of the Fourth Amended Complaint, and order a new trial against Alpha Therapeutic Corporation.

(*Id.* at 50)

Because Gruca never substantively addressed the trial judge's directed verdict on Counts I through III, this passing reference in the brief's conclusion is insufficient to consider the matter raised.  "[I]f an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation."  *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995).  Thus, unless the appellate court's ruling affected the directed verdict as to Counts I through III, the law of the case – absent any exceptions to the application of the doctrine – precludes Gruca from relitigating those claims here.

The Seventh Circuit's portrayal of Gruca's liability theories and the trial court's resolution of them comports with this court's understanding:

[Gruca's] complaint sought damages under two theories of liability, negligence and alternative liability. Although these counts were treated separately in the complaint, the underlying tortious conduct of the plaintiffs' alternative liability claims was negligence. At the close of all the evidence, the district court, with the plaintiffs' consent, directed a verdict in favor of the defendants with respect to the plaintiffs' negligence claims. The district court also directed a verdict in favor of the defendants on the plaintiffs' claim that Poole's death was hastened by additional exposure to HIV after his initial infection. The jury returned a verdict in favor of all defendants on the plaintiffs' remaining alternative liability claims. In response to a special verdict form submitted by the district court, the jury found that none of the defendants had been negligent in any of the ways charged by the plaintiffs.

*Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 641 (7th Cir. 1995) (footnotes omitted).

The Seventh Circuit reversed the jury's verdict and granted Gruca a new trial on two grounds: first, because the trial court's directed verdict on the antigenic stimulation claim was erroneous, *see id.* at 641-642; and second, because Alpha made improper remarks regarding the FDA during its closing argument and the trial court issued an erroneous instruction in response to Gruca's objection to those remarks. *See id.* at 645-46. Only the first ground is potentially relevant to the present inquiry.

After explaining the antigenic stimulation theory and quoting the trial court's directed verdict jury instruction, the appellate court stated that "[a]s a result of this directed verdict, the only issue before the jury on the plaintiffs' wrongful death claim was whether any defendant was liable for Poole's *initial* HIV infection under the alternative liability doctrine." *Id.* at 642 (emphasis added). While not dispositive, the appellate court's observation suggests that the antigenic stimulation theory supported the alternative liability claims – the implication is that, if not for the jury instruction, the jury would have been allowed to determine liability under the alternative liability doctrine not only for the initial HIV infection, but for any aggravation or acceleration caused by subsequent exposure. At a minimum, the appellate court's language underscores the point that if, as Gruca suggests, the antigenic stimulation theory related solely to

13

Counts I through III, the trial court's jury instruction would have been superfluous given that those counts already had been dismissed.

> The basis for the appellate court's reversal of the directed verdict was straightforward:

> None of the evidence at trial established the date of Poole's initial HIV infection. Poole could have been infected with HIV several years prior to March 1986 and developed AIDS in a normal manner. The jury, however, could have found from the circumstantial evidence presented by the plaintiffs that Poole's sudden decline in health after January 1985 was caused by exposure to additional viruses through his use of Factor VIII concentrate. The district court's directed verdict therefore was improper.

*Id.* Noting that the defendants had raised *Daubert* objections to Gruca's expert testimony regarding antigenic stimulation, the appellate court remanded "the plaintiffs' antigenic stimulation claim to the district court with directions to evaluate this evidence under the *Daubert* framework." *Id.* at 643.

The appellate court's reversal of the antigenic stimulation directed verdict did not imply that the trial court's directed verdict on the traditional negligence claims was erroneous. There is no indication in the record that the traditional negligence claims – as embodied in Counts I through III – were dismissed based on the court's rejection of the antigenic stimulation theory. The appellate court analyzed the antigenic stimulation evidence as it applied to the defendants collectively, and did not suggest that the evidence would allow the jury to distinguish among the defendants in assigning liability. Accordingly, even the broadest reading of the appellate court's analysis does not bring Counts I through III back into the case.

At its core, Gruca's argument is that because the directed verdict on Counts I through III is somehow linked with the antigenic stimulation directed verdict, then the appellate court's reversal of the latter carries with it an implicit reversal of the former. This court finds no substance to the purported link between the two directed verdicts. As noted above, Gruca argued

14

in her appellate brief that "[t]he basis of the District Court's [antigenic stimulation] ruling was that there was insufficient evidence that there was an aggravation or acceleration of Poole's disease." (Exh. J to Mtn. for Summ. J. at 24) While the basis of the court's directed verdict on Counts I through III is unclear, there is no indication that it was based on insufficient antigenic stimulation evidence. (*See* Exh. D to Mtn. for Summ. J.)

Gruca argues that even if the law of the case doctrine applies, her claims fall within recognized exceptions to the doctrine. While Gruca raises three possible exceptions, *see Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991) (recognizing exceptions to law of the case where previous decision is clearly erroneous or where there is substantial new evidence), the court needs only to address one to resolve Alpha's motion for summary judgment. Gruca contends that enforcing the law of the case doctrine here will cause an injustice. *See United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986) (observing that the law of the case "will not be enforced where doing so would produce an injustice"). The court agrees.

Several factors, considered together, compel the court to conclude that this is the rare situation in which application of the law of the case is unwarranted because it will create an injustice. First, Gruca's Fifth Amended Complaint reflects the changed circumstances of this case, not a conscious disregard of previous court rulings. At the first trial, Gruca apparently concluded that her best strategy was to pursue claims through the alternative liability theory that all four defendants were negligent, thereby shifting the burden to defendants on the issue of causation. After winning her appeal and settling with three defendants, Gruca's alternative liability theory has been rendered inapplicable. This court does not believe that the law of the case should prohibit Gruca from amending her complaint to reflect those changed circumstances and proceeding on a negligence and causation theory against the one remaining defendant.

15

Second, while the court does not believe that the Seventh Circuit's reversal affected the trial court's directed verdict on Counts I through III, that conclusion was reached only after hours of poring through the trial and appellate records. Even then, the conclusion emerged from reasonable inference and logical deduction, not from explicit statements by the trial or appellate courts. The record is especially murky as to the basis for the directed verdict on Counts I through III. Judge Grady stated only that he directed the verdict on Counts I and II because "they are straight negligence counts, and the alternative liability burden of proof shift does not apply to that." (Exh. D to Mtn. for Summ. J.) This statement gives no indication as to whether Judge Grady actually found that Gruca could not establish causation as to any individual defendant, or whether he felt that the straight negligence counts were inconsistent with the alternative liability counts. If the latter, then Judge Grady very well might have allowed Alpha to proceed to the jury on the straight negligence counts alone.

Third, Gruca may have believed in good faith that she effectively challenged the directed verdict on Counts I through III on appeal. She expressly included that directed verdict in her notice of appeal and in her appellate brief's conclusion, but she did not substantively address it in her brief. Given the murkiness of the trial court proceedings, Gruca may reasonably have believed that her challenge to the antigenic stimulation directed verdict carried an implicit challenge to the directed verdict on Counts I through III.

Fourth, if Gruca had failed or refused to settle with the defendants other than Alpha, her alternative liability claims would still be viable. While this does not, standing alone, bar the application of the law of the case, the court believes that, under these circumstances, Gruca's willingness to settle her claims against three defendants should not penalize her efforts to recover from the fourth.

Fifth, Alpha's motion for summary judgment based on the law of the case doctrine was not filed until more than three years after Gruca's Fifth Amended Complaint was filed. The court does not fault Alpha for this delay, but the passage of time does, to a certain degree, shift the balance of prejudices posed by Alpha's motion. This is an issue that could have been raised as soon as the Fifth Amended Complaint was filed; during the intervening three years, Gruca expended considerable sums on discovery and other pre-trial preparations.

Finally, any prejudice to Alpha posed by Gruca's Fifth Amended Complaint stems solely from Gruca's settlements with the other defendants, not from the evisceration of any rulings or rights earned by Alpha in the previous litigation. In light of the appellate court's reversal, Alpha would have faced another trial on the alternative liability claims if the other defendants remained in the case. If the new jury had found Alpha negligent, then Alpha would have borne the burden of proving that its product did not infect Gruca's husband. The other three defendants would have borne the same burden, resulting in a four-way effort to shift or avoid blame. After settlement, Gruca can no longer rely on the alternative liability theory. Accordingly, she bears the burden of proving both that Alpha was negligent, and that Alpha's product infected her husband. Alpha does not bear the burden of proving anything, nor does Alpha face the prospect of three co-defendants pointing their fingers at Alpha in front of the jury. If Gruca had not settled with the other defendants, the law of the case would have been irrelevant, and Alpha would have faced a tougher test at trial. While the settlements provided Alpha with a good-faith basis for raising the law of the case, Alpha arguably would have been worse off absent the settlements. The nature of Alpha's prejudice does not preclude application of the law of the case, but it does bear on the equities involved.

After long and careful consideration, the court believes that, in light of this case's long

and circuitous route, throwing out Gruca's remaining claims based on her failure to address fully one of the trial court's rulings on appeal amounts to an unjustifiably narrow and hyper-technical application of the law of the case. Under the circumstances of this case, the court believes that Gruca is entitled to her day in court.

The court also rejects Alpha's argument that Gruca should be judicially estopped from attempting to establish causation as to Alpha individually. Alpha argues that Gruca "'prevailed' on her contention that she was unable to identify the manufacturer responsible for Mr. Poole's infection because she was allowed in the first trial to proceed to the jury on an alternate liability cause of action." (Mem. in Supp. of Mtn. for Summ. J. at 14) As explained above, the basis for the directed verdict on Counts I through III is unclear. If Gruca had withdrawn her alternative liability claims, the trial court may have allowed her to proceed to the jury with her traditional negligence claims. The record in this case does not allow this court to make that determination. Further, to the extent Gruca has changed her strategy, the court believes that it is a result of changed circumstances, rather than an attempt to manipulate these proceedings. Accordingly, the court will not judicially estop Gruca from attempting to prove that Alpha caused her husband's illness.

Alpha argues that the law of the case also precludes Gruca's claim for emotional distress set forth in Count IV of her complaint. Because this claim "arises out of precisely the same allegedly negligent acts underlying her other three claims," Alpha insists that the directed verdict in the first trial disposes of it "as a matter of law." (Mem. in Supp. of Mtn. for Summ. J. at 3) One obvious flaw in Alpha's argument is that the trial court did not grant a directed verdict on Gruca's emotional distress claim. The court is skeptical that a directed verdict on the first three counts truly precludes – "as a matter of law" – the emotional distress claim given that the trial

court allowed the claim to go to the jury in the wake of that directed verdict.

The court believes that this underscores a fundamental difference between the emotional distress claim and Counts I through III. To recover for the negligent infliction of emotional distress, Gruca need not show that her husband's disease was caused by a particular defendant. Rather, she must show that her emotional distress was caused by a particular defendant's negligent conduct. *See Brackett v. Galesburg Clinic Ass'n*, 689 N.E.2d 406, 410 (Ill. App. Ct. 1997) ("To state a cause of action for the tort of negligent infliction of emotional distress, a plaintiff must allege that the infliction of emotional distress arose out of the negligent acts of a defendant."). Specifically, Gruca alleges that she "became directly exposed to HIV during the course of ordinary marital and conjugal affairs and other bodily contact with him while caring for him, thereby inflicting upon her tremendous and excruciating emotional anguish from the fear of contracting HIV and progressing to AIDS." (Exh. L to Mtn. for Summ. J. at 9)

Gruca could prove this without establishing which particular company produced the concentrate factor that caused her husband's disease. Even if Gruca can show only that her husband received contaminated concentrate factor from four different companies, including Alpha, and that she subsequently had bodily contact with him, each company arguably caused her emotional distress. Which particular company's concentrate factor caused her husband's disease is irrelevant – conceivably, he carried contaminants from each company's product. It is Gruca's exposure to these contaminants – not the underlying injury to her husband – on which her emotional distress claim is based.

Accordingly, the trial court's directed verdict on Counts I through III does not preclude Gruca from proceeding on Count IV. For the same reasons, the doctrine of judicial estoppel does not bar Count IV. If other grounds for summary judgment on Count IV exist, they have not been

adequately set forth in Alpha's motion.

## **Conclusion**

For the above reasons, Alpha's Motion for Summary Judgment is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:   May 11, 2000